UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

            Plaintiff,

v.                                                Case No. 14-CR-55

PAUL SHEGONEE,

            Defendant.

_____

**DEFENDANT PAUL SHEGONEE'S SENTENCING MEMORANDUM
AND REQUEST FOR 18 U.S.C. § 3553 SENTENCE**
_____

      **NOW COMES** the Defendant, Paul Shegonee, by counsel, Alex Flynn and Associates S.C., and submits this Sentencing Memorandum and Request for 18 U.S.C. § 3553 Sentence. For the reasons stated below, Mr. Shegonee requests that the court impose a term of imprisonment of 120 months because it adequately addresses the goals of sentencing in §3553(a)(2), based on the §3553(a) factors.

**REQUEST FOR NON-GUIDELINE SENTENCE
PURSUANT TO TITLE 18 U.S.C. § 3553(a)(2)**

      In <u>United States v. Booker</u>, 543 U.S. 220 (2005), a majority of the United States Supreme Court held that the Sixth Amendment's jury trial guarantee prevented judges from finding facts that exposed a defendant to an increased prison sentence. As a remedy, a different majority excised the provision of the Federal sentencing reform act that made the sentencing guidelines mandatory. This majority declared that a sentencing court must still consider the guideline range, but must also consider other directives contained in 18 U.S.C. § 3553(a). That statute directs a sentencing court as follows:

> (a) **Factors to be considered in imposing a sentence.** -- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
>> (1) the nature and circumstance of the offense and the history and characteristics of the defendant;
>>
>> (2) the need for the sentence imposed –
>>
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> (B) to afford adequate deterrence to criminal conduct;
>>>
>>> (C) to protect the public from further crimes of the defendant; and,
>>>
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In <u>United States v. Dean</u>, 414 F.3d 725 (7th Cir. 2005), the Seventh Circuit outlined the procedure to be followed by the sentencing court post-<u>Booker</u>. The court said:

> The Supreme Court's decision in <u>Booker</u> requires the sentencing judge first to compute the guidelines sentence just as he would have done before <u>Booker</u>, and then – because <u>Booker</u> demoted the guidelines from mandatory to advisory status – to decide whether the guidelines sentence is the correct sentence to give the particular defendant. <u>Id.</u>

The court noted that, unlike the sentencing guidelines, the directives of §3553(a) remain mandatory after <u>Booker</u>. Therefore, the court said,"[t]he defendant must be given an opportunity to draw the judge's attention to any factor listed in §3553(a) that might warrant a sentence different from the guidelines sentence . . ." <u>Id.</u> The court added that the sentencing judge, after considering

2

the factors listed in §3553(a), cannot "import his own philosophy of sentencing if it is inconsistent with them."

The court, citing three distinct court cases, described the post-Booker sentencing regime as one "in which the guidelines, being advisory, can be trumped by §3553(a)." Id., citing Simon v. United States, 361 F. Supp. 2d 35 (E.D.N.Y. 2005); United States v. Kelley, 335 F.Supp 2d 1031 (D.Neb. 2005); United States v. Ranum, 353 F.Supp. 2d 984, 985-86 (E.D. Wis. 2005).

Prior to Booker, sentencing courts were prohibited from considering a whole range of personal characteristics in deciding to impose a sentence outside the applicable guideline range. For example, the court was forbidden to consider: the defendant's age, U.S.S.G. § 5H1.1; his education and vocational skills, U.S.S.G. § 5H1.2; his mental and emotional condition, U.S.S.G. § 5H1.3; his drug and alcohol dependence, U.S.S.G. § 5H1.4; or his lack of guidance as a youth, U.S.S.G. § 5H1.12.

However, the guidelines are now advisory. Since Booker, the guidelines' prohibition against considering these factors cannot be reconciled with the court's continuing obligation under §3553(a) to consider personal characteristics of the defendant. This was confirmed by the Seventh Circuit in Dean:

> Under Booker the uses that a sentencing judge could make of the factors listed in §3553(a) were severely circumscribed by the next subsection in order to preserve the mandatory character of the guidelines. 18 U.S.C. §3553(b). But now that they are advisory, the §3553(a) remains unchanged, judges will have to consider the factors that the section tells them to consider. "Section 3553(a) remains in effect and sets forth numerous factors that guide sentencing." United States v. Booker, supra, 125 S.Ct. at 766, see also Id. at 764-65. "Booker suggests that the sentencing factors articulated in § 3553(a), which the mandatory guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion." United States v.

3

Trujillo-Terazas, 405 F.3d 814, 819 (10th Cir. 2005).

In addition to the directives of 18 U.S.C. § 3553(a), there is the requirement of 18 U.S.C. §3661 that:

> No limitation shall be place on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

**ARGUMENT**

**I.     Objection to Armed Career Offender Classification:**

Mr. Shegonee reasserts his objection to his classification as Armed Career Criminal pursuant to 18 U.S.C s. 924(e)(1). The Armed Career Criminal Act, "ACCA" requires imposition of a minimum 15-year term of imprisonment for individuals who are convicted of an offense under 18 U.S.C. s. 922(g), who have three prior state or federal convictions for violent felonies or serious drug offenses. The Superseding Indictment in the instant case, at page, 2 alleges the following offenses qualify for inclusion under the ACCA: battery by prisoners, case number 2002CF25; arson of property other than building, case number 2001CF64; possession with intent to deliver cocaine, case number 2001CF141; and arson of a building, case number 2001CF0030. Although the government has asserted in its response to Mr. Shegonee's objections that he has more convictions which would count as predicate offenses under the ACCA, the aforementioned convictions were the only offenses which the government provided notice to the defendant in the Superseding Indictment.

The ACCA defines violent felonies as those punishable by imprisonment for a term exceeding one year that (1) have an element of threat, attempt, or use of physical force against another, (2) that involve burglary, arson, or extortion, involves use of explosive, or otherwise

4

involves conduct that presents a serious potential risk of physical injury to another. See 18 U.S.C. 924(e)(2). The battery offense, Case No. 2002CF25, does not necessarily contain as an element a threat, attempt, or use of physical force against another. *See* attached Exhibit A, (WI JI 1228 Battery of Prisoner). Moreover, the offense is not an arson, burglary, extortion or otherwise involve the use of explosives, therefore the conviction falls under the recently deemed unconstitutional residual clause. In *Johnson v. United States,* 576 U.S. ___(2015), the United States Supreme Court declared the residual clause unconstitutionally vague holding:

> [t]he the indeterminacy of the wide ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence under the clause denies due process of law. 576 U.S. ___(2015). *See* attached Ex. B, *Johnson v. United States* at p 5.

As the Court noted in *Johnson*, there are simply no guidelines for how this court should assess whether the underlying the battery offense posed a serious potential risk of injury. The Court further reasoned that by "tying the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime rather than to real-world facts or statutory elements, the [residual] clause leaves grave uncertainty about how to estimate the risk posed by a crime." *Id.*

Facts must be found, however apparent, as to the nature of the battery, i.e., physical force and whether, for example, Mr. Shegonee's involvement was of an inchoate nature. Moreover, the issue of whether a battery is a predicate act under the ACCA has been discussed by other courts. Another Johnson decision, *Johnson v. United States* ___ U.S. _____, 130 S.Ct 1265, 176 L.Ed.2d 1 (2010), has been cited for the proposition that battery convictions do not automatically qualify under the ACCA. In this 2010 *Johnson* case, the Supreme Court determined that violation of Florida's battery statute did not constitute a violent felony under the "use of force" prong of the definition. In

5

*United States v. Bradford* 766 F.Supp.2d 903, 906 (E.D. Wis. 2011) the court found the argument in *Johnson* unpersuasive and found Wisconsin's *substantial battery* conviction would qualify as a predicate act. However, both these decisions were before the current 2015 *Johnson* decision where Shegonee's battery conviction only required proof of bodily harm, not substantial bodily harm.

Since Shegonee's battery offense falls under the residual clause, and because there would need to be a factual determination whether underlying conduct posed a serious risk of harm, Mr. Shegonee objects to its inclusion as predicate offense under the ACCA.

Mr. Shegonee reasserts his objection to the "arson" convictions being included as predicate offenses under the ACCA. Significantly, in the recent *Johnson* decision, the Court reasoned that even the enumerated offenses within the ACCA, burglary, arson, extortion and use of explosives may not qualify as violent felonies for purposes of inclusion as predicate offenses under the ACCA. Justice Scalia wrote the following:

> Does the ordinary burglar invade an occupied home by night or an unoccupied home by day? Does the typical extortionist threaten his victim in person with the use of force, or does he threaten his victim by mail with the revelation of embarrassing personal information? By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates. *Johnson v. United States v. ___*(2015). *See* attached Ex. B, *Johnson v. United States* at p 6.

The "arson" in Forest County, case number 2001CF64, involved a vehicle in the woods. *See* Pre Sentence Report at p 22. Mr. Shegonee, relying on the 2015 *Johnson* decision, will argue judicial inquiry and factual determination regarding the degree of risk posed by the burning of the car precludes it use as a predicate offense under the ACCA. Further, nowhere in the elements of the offense is the word arson employed. *See* Ex C, WI JI 1404 &1408 Arson). §990.001(6) Wis. Stats

6

states, among other things, that titles to statutes are not part of the statutes. Therefore, whether the conduct of burning a car in the woods is an "arson" contemplated by the ACCA is questionable. Mr. Shegonee is aware that this argument has been presented and rejected by the Seventh Circuit in *United States v. Misleveck* 735 F. 3d 983 (7th Cir. 2013); however in light of the United States Supreme Court June 2015 decision in *Johnson v. United States*, Mr. Shegonee will argue this issue should be revisited.

Mr. Shegonee will further argue that inclusion of his 20 year old arson conviction, as a predicate offense under the ACCA is contrary to the mandate of the sentencing factors found in 18 U.S.C. s. 3553.

## II. Mr. Shegonee's co-defendant received a sentence of probation uniformity in sentencing demands consistent sentencing.

One of the driving forces behind the United States Sentencing Guidelines was Congress' desire to promote uniformity in sentencing. *See* U.S.S.G. Ch. 1, Pt. A, 1.3 ("The Basic Approach") ("Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."). Mr. Shegonee will argue at sentencing that his sentence should within the 120 month range to promote uniformity in sentencing. In the instant case, Mr. Shegonee's co-defendant, received a sentence of probation for substantially similar conduct. Mr. Shegonee will ask the court to sentence him to a term of imprisonment of 120 months to take into account his criminal history, while also taking into account the sentence imposed on his co-defendant, John Frisby.

## CONCLUSION

In summary, Mr. Shegonee meets the mitigating criteria of 18 U.S.C. and he will ask the

7

court to impose a sentence of 120 months imprisonment based on the §3553(a) factors.

Dated at Milwaukee, Wisconsin, this 2nd day of February, 2016

s/ Alex Flynn
Alex Flynn, State Bar No. 01015056
Alex Flynn & Associates, S.C.
1223 N. Prospect Ave.
Milwaukee, WI 53202
Telephone: 414/276-7400
Fax: 414/276-5525
E-mail: alex@alexflynn.com

Enclosures

cc: Paul Shegonee
    AUSA Stephen Ingraham
    James Featherstone, US Probation and Parole