# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PAUL D. SHEGONEE, <br><br> Defendant. | Case No. 14-CR-55-1-JPS <br><br> **ORDER** |

## 1. BACKGROUND

On October 21, 2021, Defendant filed a motion for compassionate release. ECF No. 127. On March 25, 2022, the Government filed an opposition brief, ECF No. 133, and Defendant replied on May 16, 2022, ECF No. 138. For the reasons explained herein, the Court will deny Defendant's motion for compassionate release.

## 2. FACTS

Defendant is a fifty-year-old man who is currently incarcerated at the Lee United States Penitentiary ("USP Lee") in Jonesville, Virginia.[1] ECF No. 102 at 4. On March 17, 2015, Defendant was found guilty by a jury of one count of being a felon in possession of a firearm and one count of theft from a federally licensed firearms dealer. ECF No. 70. On February 8, 2016, this Court sentenced Defendant to 200 months' imprisonment. ECF No. 108. According to the Bureau of Prisons, Defendant's release date is April 6, 2029.[2]

---

[1] *Find an Inmate*, Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last visited June 23, 2022).

[2] *Id.*

In his motion, Defendant seeks release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that there are three "extraordinary and compelling" reasons for the Court to take this action. ECF Nos. 127, 128. First, he asserts that his battle with the COVID-19 virus has taken a toll on his physical and mental health and that continued incarceration exacerbates these issues, making him a more expensive prisoner. ECF No. 127 at 5. Second, he claims that deteriorating circumstances involving the care of his minor son mean that he is uniquely suited to help alleviate this matter. *Id.* Third, he claims to have been rehabilitated during his time in prison, through completing various prison programs offered to him and a greater understanding with age and experience of the damage done by his past crimes, as well as a consequent determination to not repeat criminal behavior. *Id.*

**3. LEGAL STANDARD**

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit has held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what

constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No. 1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 n.1.(A)(ii). The commentary further provides for certain family circumstances which may support compassionate release, namely the death or incapacitation of the caregiver of a defendant's minor child(ren) or the incapacitation of a defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.* § 1B1.13 n.1.(C).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

### 4. ANALYSIS

First, the Government does not contest that Defendant exhausted his administrative remedies. ECF No. 133 at 6; *Gunn*, 980 F.3d at 1179 ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it.") (internal citations omitted). The Court next determines whether Defendant has an extraordinary and compelling reason warranting his release and whether the sentencing factors counsel against Defendant's early release.

#### 4.1 Defendant's Health and COVID-19

Defendant asserts that he still suffers lingering effects from a COVID-19 infection, including breathing problems, headaches, joint

Page 4 of 11
Case 2:14-cr-00055-JPS    Filed 06/23/22    Page 4 of 11    Document 140

problems, and psychological harm from the ongoing threat of reinfection while incarcerated in close quarters. ECF Nos. 127 at 5, 7; 127-3 at 4. He also discusses that his obesity places him at higher risk for severe complications. ECF No. 128 at 1. Thus, he argues that he has an extraordinary and compelling reason for his early release.

The outbreak of COVID-19, together with underlying medical conditions that place a defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting release. *See, e.g.*, *United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). However, the risk calculus has changed significantly given the introduction of several very effective and increasingly widely available vaccines that inoculate against COVID-19. Importantly, on August 23, 2021, after rigorous and thorough evaluation, the Food and Drug Administration approved the Pfizer-BioNTech COVID-19 vaccine for all individuals aged 16 years and older.[3] Other vaccines, including the Moderna vaccine, have been approved for emergency use since late 2020, with great success.[4]

It quickly became the law in the Seventh Circuit that, "for most prisoners[,] the availability of vaccines for COVID-19 'makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.'" *United States v. Sullivan*, No. 20-2647, 2021 WL 3578621, at *2 (7th Cir. Aug. 13, 2021) (quoting *United States v. Broadfield*,

---

[3] FDA News Release, U.S. Food & Drug Admin., FDA Approves First COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

[4] *See* U.S. Food & Drug Admin., Moderna COVID-19 Vaccine (updated Aug. 18, 2021), https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine.

5 F.4th 801, 803 (7th Cir. 2021)); *see also United States v. Burgard*, No. 20-3210, 2021 WL 3781384, at *2 (7th Cir. Aug. 26, 2021); *United States v. Eveland*, No. 20-3449, 2021 WL 3414202, at *1 (7th Cir. Aug. 5, 2021); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). Still though, the Seventh Circuit has reined in the district courts' running with this case law:

> We close with an observation about COVID-19 vaccines in the context of requests for compassionate release. The government points to our language in *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021), in which we said that the availability of vaccines had effectively eliminated the risks of COVID-19 to most federal prisoners. But that opinion was handed down before Omicron became the dominant variant in this country (with an increase in breakthrough infections among the fully vaccinated). And it included a safety valve for prisoners to show that they are unable to receive or benefit from a vaccine, or that they remain vulnerable to severe infection, notwithstanding the vaccine. *Id.* Recent events underscore the need for a district court's opinion to leave us assured that it considered the applicant's individualized arguments and evidence.

*United States v. Rucker*, No. 21-2001, 2022 WL 610625, at *3 (7th Cir. Mar. 2, 2022). Thus, while Defendant's vaccination status does not immediately eliminate him from consideration for early release, it certainly undercuts his request.

An individualized look at Defendant's case instructs that compassionate release is not appropriate for reasons related to COVID-19. Defendant was infected with COVID-19 at the prison on October 28, 2020, with an asymptomatic case. He was isolated and later deemed to have recovered and, thus, returned to the general prison population by November 9, 2020. ECF No. 133-1 at 1–3. His medical records indicate that he "[did] well" recovering from the virus. *Id.* at 3. Defendant was vaccinated on March 22, 2021, and he received the follow-up vaccination on

April 13, 2021. *Id.* at 4–5. His current medical prognosis by prison medical personnel, as recently as April 29, 2022, shows no indication of any ongoing negative health issues from having had the virus, such as breathing problems or serious fatigue. *Id.* at 6–9 (Defendant denying any symptoms of cough, wheezing, or shortness of breath to medical staff); ECF No. 139-1 at 4 (same). Medical personnel noted no serious psychological issues. ECF No. 133-1 at 6–9. The Court does not dispute that Defendant has suffered from some effects from the COVID-19 pandemic, both physically and psychologically, nor that he has some conditions that may place him at a higher risk of serious infection (e.g., elevated blood pressure and obesity, ECF No. 139-1 at 5. But Defendant has not presented evidence that his being fully vaccinated will not greatly benefit his prospects. For example, Defendant does not appear to have a severely weakened immune system. Vaccination at USP Lee is well underway. ECF No. 127 at 10. As to Defendant, COVID-19 does not offer an extraordinary and compelling reason warranting release.

### 4.2 Defendant's Family Circumstances

In support of his motion, Defendant argues that he is needed at home to care for his minor son. He includes as exhibits letters from the Indian Child Welfare Department on February 10, 2021 and August 2, 2021, signed by a staff member whose title is "Family Preservation Worker." ECF No. 127-2 at 22–26. The February letter discussed Defendant's son's foster-care placements and behavioral problems resulting in contacts with law enforcement; the August letter seems to refer to plans to place Defendant's son with a foster family from his current group home placement, where Defendant's son allegedly injured a peer and a staff member. *Id.* Defendant is concerned that his son is being "bounced" between foster homes and

contends that he is the sole familial caregiver for his son. ECF No. 127 at 5. He claims that his son "is acting out because he wants his parents, however [they] are both in custody." *Id.* at 7.

As discussed above, the advisory note to USSG § 1B1.13 identifies the eligible family circumstances for compassionate release narrowly. They include the death or incapacitation of the caregiver of a defendant's minor child. Defendant asserts that "prior to arrest [he] was deeply engaged in [his] child's life." *Id.* at 8. He contends that since his son is in a group setting, he is at greater risk of COVID-19 infection. *Id.* He also notes that the absence of both parents has caused his son to act out. *Id.* at 9. The Government argues, however, that Defendant was not, in fact, the involved father that he now paints himself to be. The Government discusses that Defendant spent parts of his son's life incarcerated and that he had a cocaine addiction for years of the child's adolescence. In the Government's estimation, "there is practically no chance that [Defendant] ever had an opportunity to establish any relationship with this son, much less a close one." ECF No. 133 at 12.

The Court understands both the Government's characterization of Defendant's time as a father and Defendant's position that prison has put his relationship with his son into a new perspective. It may be true that Defendant played a less-than-positive role in his son's life prior to his present conviction but that, if released, Defendant could be of great service to his child. The Court also finds unsavory the Government's discussion that Defendant's limited income and savings would make him a poor candidate to father his child; excellent parents across the country raise prosocial children with very limited means of doing so. Still though, Defendant's parenting plans are presently insufficient to instill confidence

Page 8 of 11
Case 2:14-cr-00055-JPS    Filed 06/23/22    Page 8 of 11    Document 140

that he can step out of prison into the role of a full-time, custodial, single father. The Court, however, need not affirmatively decide whether Defendant's son's need for a guardian presents an extraordinary and compelling reason for Defendant's immediate release. This cases rests on whether the sentencing factors counsel in favor of Defendant's release.

### 4.3 Sentencing Factors

Defendant's acts that made up the offense for which he is incarcerated show dangerousness. He and a male companion, whom he had coerced into participating, broke into a hardware store in the middle of the night to steal eight rifles and shotguns, which they transported to Milwaukee to sell. ECF No. 102 at 3–5. Defendant sold four of the eight stolen long guns (one of which was recovered by Milwaukee Police in December 2014 when they executed a no-knock search warrant for guns and drugs). *Id.* at 5. While in jail awaiting trial, Defendant tried to have a fellow inmate murder a witness and coached two of his sisters to fabricate alibis for him at trial while under oath, *id.*, in a repeat of several previous threats-to-witnesses incidents, *id.* at 18–29.

At the time of this offense, Defendant was on extended supervised release for offenses in Vilas and Forest Counties, which he committed in 2001 (witness intimidation, threat of force) and 2003 (perjury and solicitation of a felony). *Id.* at 18–32. Thus, Defendant's most recent record shows a repeated inclination for violent and threatening behavior.

Defendant's criminal history prior to committing the present offenses took over twenty pages of the presentence report to describe. *Id.* at 11–32. His thirty-three criminal history category points are fully twenty points higher than needed to be in the maximum Criminal History Category VI. *Id.* at 32.

His criminal history includes, with the exception of the case for which he is now imprisoned, over a dozen adult sentences of imprisonment and several revocations of probation or parole. *Id.* These sentences were pronounced over a span of four decades. His past crimes included firearms charges, theft, home invasion, arson, battery, threatening witnesses, drugs, fleeing, and disorderly conduct, to name a few. In the present case, his proposed sentencing guideline range of 324 months at the bottom end was 124 months higher than the actual sentence imposed of 200 months. ECF No. 108. Further, while incarcerated, Defendant has been disciplined for separate incidents of biting a prison staff member and possessing methamphetamine. ECF No. 133-1 at 10. In summation, there has been almost no letup of Defendant's criminal activity in his adult life outside of when he is institutionalized.

Defendant has provided many certificates which celebrate the educational opportunities to which he has successfully availed himself. ECF Nos. 127-2 at 8–20, 128-1 at 1–6. He discusses the treatments he has received through the Bureau of Prisons and his willingness to discuss the wrongness of his past actions. ECF No. 128 at 1–2. The Court applauds the steps that Defendant has taken to improve his life. But his crimes in the present case are serious, and his criminal history reflects a severe need for continued rehabilitation at best and incapacitation at worst. He still has just under seven years of his sentence left to serve. At this juncture, the § 3553(a) factors do not support early release. Defendant's continued incarceration promotes respect for the law, reflects the seriousness of his crimes, and protects the public from further crimes.

5. **CONCLUSION**

It is not clear that Defendant has proffered an extraordinary and compelling reason warranting his release. Determinatively though, the sentencing factors counsel against Defendant's early release. Therefore, the Court will deny Defendant's motion for compassionate release, ECF No. 127. The Court will grant the Government's motion to seal, ECF No. 132. The Court will deny Defendant's motion to take judicial notice, ECF No. 134, as the Court did not rely on the information provided in the attached documents; the Court will seal the attached documents, ECF No. 134-1, as they contain information about Defendant's minor son.

Accordingly,

**IT IS ORDERED** that Defendant Paul D. Shegonee's motion for compassionate release, ECF No. 127, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Government's motion to seal, ECF No. 132, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendant Paul D. Shegonee's motion to take judicial notice, ECF No. 134, be and the same is hereby **DENIED**; the Court will seal the attached documents, ECF No. 134-1.

Dated at Milwaukee, Wisconsin, this 23rd day of June, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge